MURGUIA, Circuit Judge,
concurring in part and dissenting in part:
While I agree with the majority’s conclusions concerning the crude oil regulations and preemption under the Clean Air Act, I respectfully dissent from the majority’s *1108 conclusion that the Low Carbon Fuel Standard’s (“LCFS”) ethanol regulations do not facially discriminate against interstate commerce.
I.
Determining whether a regulation facially discriminates against interstate commerce begins and ends with the regulation’s plain language. Discrimination “simply means differential treatment of instate and out-of-state economic interests that benefits the former and burdens the latter.” Or. Waste Sys., Inc. v. Dep’t Env’t Quality of State of Or., 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). “[T]he purpose of, or justification for, a law has no bearing on whether it is facially discriminatory.” Id. at 100, 114 S.Ct. 1345. Only after we find discrimination do we address, in our application of strict scrutiny, whether the reason for the discrimination is sufficiently compelling to justify the regulation. See, e.g., Or. Waste Sys., 511 U.S. at 100-07, 114 S.Ct. 1345 (examining purported justifications for facially discriminatory regulation); Chem. Waste Mgmt., Inc. v. Hunt, 504 U.S. 334, 342,112 S.Ct. 2009,119 L.Ed.2d 121 (1992) (noting that the “additional fee facially discriminates” and then examining the purported justifications for the discrimination).
I would therefore look only to the text of the LCFS to determine if it facially discriminates against out-of-state ethanol. See Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 575-76, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (“It is not necessary to look beyond the text of this statute to determine that it discriminates against interstate commerce.”). Table 6 differentiates between in-state and out-of-state ethanol, according more preferential treatment to the former at the expense of the latter.[1] Table 6 thus facially discriminates against out-of-state ethanol. See Or. Waste Sys., Inc., 511 U.S. at 100, 114 S.Ct. 1345 (“In making [the] geographic distinction, the [regulation] patently discriminates against interstate commerce.”).[2]
The majority puts the cart before the horse and considers California’s reasons for distinguishing between in-state and out-of-state ethanol before examining the text of the statute to determine if it facially discriminates. This approach is inconsistent with Supreme Court precedent, which instructs that we must determine whether the regulation is discriminatory before we address the purported reasons for the discrimination. See Or. Waste Sys., 511 U.S. at 99,114 S.Ct. 1345.
II.
Because the LCFS facially discriminates against interstate commerce, it is subject to strict scrutiny and is unconstitutional unless California can demonstrate that it: (1) serves a legitimate local purpose, and *1109 (2) that purpose could not be served as well by available nondiscriminatory means. Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). “The State’s burden of justification is so heavy that ‘facial discrimination by itself may be a fatal defect.’ ” Or. Waste Sys., Inc., 511 U.S. at 101, 114 S.Ct. 1345 (quoting Hughes v. Oklahoma, 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)).
I would find that the LCFS serves the local purpose of reducing GHG emissions because California has a “legitimate interest in guarding against imperfectly understood environmental risks, despite the possibility that they may ultimately prove to be negligible.” Taylor, 477 U.S. at 148, 106 S.Ct. 2440; see also Massachusetts v. EPA, 549 U.S. 497, 516-21, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (holding, for purposes of standing, that Massachusetts has an interest in regulating GHG emissions).
The second question—whether California can reduce GHG emissions through nondiscriminatory means—is more difficult. As explained by the majority, California’s decision to disfavor out-of-state ethanol is connected to the goal of reducing lifecycle GHG emissions because California calculated that, on average, ethanol from other states produces more lifecycle GHG emissions. But even if, on average, ethanol from other states produces more lifecycle GHG emissions, that does not mean that the only way to regulate those emissions is by penalizing out-of-state producers. See Toomer v. Witsell, 334 U.S. 385, 397-98, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (observing that even if out-of-state fishing boats were larger and more disruptive than in-state boats, the state could simply regulate the size of the boats). For example, if the LCFS treated ethanol produced in efficient plants more favorably than ethanol from inefficient plants—rather than taking the shortcut of assuming that plants outside of California are less efficient—it could reduce lifecycle GHG emissions without facially discriminating against out-of-state ethanol. In fact, at oral argument, California acknowledged that there exist alternative ways to use lifecycle analysis to reduce GHG emissions:
THE COURT: Is it your contention that the [LCFS] currently written represents the only way that the lifecycle analysis approach can be implemented or ever utilized to address [GHG] emissions?
DEFENDANTS-APPELLANTS: It’s not our position that the LCFS is the only way the lifecycle could be used. It is our position that the lifecycle is the only way to accurately measure [GHG] emissions from transportation fuels.
Hr’g Tr. 4:59-5:28 (Oct. 16, 2012) (emphasis added).
The nondiscriminatory alternative is apparent in the LCFS’s current structure: Regulated parties may seek individualized pathways that use lifecycle analysis, but not Table 6’s discriminatory carbon intensity values. These pathways are a reasonable, nondiscriminatory alternative that California could use to reduce lifecycle GHG emissions. This reasonable alternative, even if it is more difficult or costly to implement, means that California has failed to meet its burden of showing that discriminating against out-of-state ethanol is the only way to reduce lifecycle GHG emissions. Cf. Taylor, 477 U.S. at 147,106 S.Ct. 2440 (while a state need not “develop new and unproven means of protection at an uncertain cost,” it “must make reasonable efforts to avoid restraining the free flow of commerce across its borders”).[3]
*1110 CONCLUSION
The LCFS is the latest chapter in California’s long history of innovative solutions to complicated environmental problems. But the current version of the LCFS facially discriminates against interstate commerce and California has failed to meet its onerous burden of demonstrating that a nondiscriminatory version of the regulation could not achieve its legitimate local interest of reducing GHG emissions. For this reason, I respectfully dissent.
Appendix One
Table 6 (2011); CaLCode Regs,
tit. 17, § 95486(b)(1)
Fuel Pathway Description Carbon Intensity
Value(gCQ2e/MJ)
Direct Land Total
______Emissions Use_
Midwest average: 80% Dry Mill; 20% 69.40 30 99.40
Wet Mill; DryDGS; NG_
California average: 80% Dry Mill; 20% 65.66 30 95.66
Wet Mill; DryDGS; NG_
California; Dry Mill; Wet DGS; NG_50.70 30 80.70
Midwest; Dry Mill; Dry DGS, NG_68.40 30 98.40
Midwest; Wet Mill, 60% NG, 40% coal 75.10 30 105.10
Midwest; Wet Mill, 100% NG_64.52 30 94.52
Midwest; Wet Mill, 100% coal_9099_30 120.99
Ethanol from Midwest; Dry Mill; Wet DGS 60.10 30 90.10 Corn _
California; Dry Mill; Dry DGS, NG_5090_30 88.90
Midwest; Dry Mill; DryDGS; 80% 63.60 30 93.60
NG; 20% Biomass_
Midwest; Dry Mill; Wet DGS; 80% 56.80 30 86.80
NG; 20% Biomass_
California; Dry Mill; DryDGS; 80% 54.20 30 84.20
NG; 20% Biomass_
California; Dry Mill; Wet DGS; 80% 47.44 30 77.44
_NG; 20% Biomass_
Brazilian sugarcane using average 27.40 46 73.40 production processes_
Ethanol from Brazilian sugarcane with average pro- 12.40 46 58.40
Sugarcane duetion process, mechanized harvesting, and electricity co-product credit_
Brazilian sugarcane with average pro- 20.40 46 66.40 duetion process and electricity _ co-product credit_
CARBOB: California Reformulated DGS: Distillers’ Grains
Gasoline Blendstóck for Oxygenate Blending NG: Natural Gas
*1111 Appendix Two
Table 6 Breakout
This table shows the complete CA-GREET pathways for Midwest and California ethanol pathways using a dry-mill process, using natural gas for thermal energy (for heating the corn), and producing dry distillers’ grains as a co-product.
Midwest California _Pathway Pathway
Carbon Carbon Lifecycle Component_Intensity_Intensity
Growing of Corn_35.8_35.8
Transportation of Corn to Plant_22_6.8
Energy Use by Plant_
Natural Gas_27.1_24,0
Electricity_11.4_3.1
Credit for Co-Products_-11.5_-12,9
Transportation from Plant to Distribution Points in 0.8 1.3 California_
Denaturant_(18_0,8
Subtotal: Direct Emissions_68.4_58.9
Land Use Change_30_30
Total Carbon Intensity_98.4_88.9

. Three examples are illustrative. The LCFS assigns a default carbon intensity value of 88.90 gC02e/MJ to California producers utilizing a dry mill, dry DGS, and natural gas production process. Midwest producers utilizing the same production process are assigned a default carbon intensity value of 98.40 gC02e/MJ, resulting in a 9.5 gC02e/MJ difference in favor of California producers. Next, California producers utilizing a dry mill, dry DGS, eighty percent natural gas, and twenty percent biomass production process enjoy a 9.4 gC02e/MJ lower carbon intensity value than their Midwest counterparts. Finally, California producers benefit from a 9.36 gC02e/MJ lower carbon intensity value over their Midwest counterparts for a dry mill, wet DGS, eighty percent natural gas, and twenty percent biomass production process.

. Because I conclude that the LCFS ethanol regulation facially discriminates, I do not reach the alternative argument that it regulates extraterritorial conduct.

. This is not to say that the only constitutional version of the LCFS is one that eliminates all default pathways. Rather, it could include default pathways that do not discriminate against ethanol solely because it was produced outside of California.